**UNITED STATES COALITION FOR FAIR CANADIAN LUMBER IMPORTS, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants,**

**and**

**Canadian Softwood Lumber Committee, Defendant-Intervenor.**

**Court No. 83-3-00414.**

United States Court of International Trade.

April 13, 1983.

Preston, Thorgrimson, Ellis & Holman, Washington, D.C. (Kermit W. Almstedt, Washington, D.C., Richard L. Barnes, Seattle, Wash., F. Amanda DeBusk, Bruce J. Heiman, Washington, D.C., Robert H. Ruxin and Shannon J. Skinner, Seattle, Wash., on the memorandum briefs), for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C. (David M. Cohen, Director, Commercial Litigation Branch and Alexander Younger, Washington, D.C., on the memorandum briefs), for defendants.

Arnold & Porter, Washington, D.C. (Robert E. Herzstein, Kenneth A. Letzler, Lawrence A. Schneider, Hadrian Katz and Herbert A. Fierst, Washington, D.C., on the memorandum briefs), for defendant-intervenor.

### Memorandum Opinion And Order Of Dismissal

BOE, Judge:

On October 7, 1982, the plaintiff filed a petition with the United States Department of Commerce, International Trade Administration (ITA), initiating an investigation of softwood lumber imports from Canada. 47 Fed.Reg. 49878. On November 17, 1982, the International Trade Commission preliminarily determined that industries in the United States are materially injured by imports of softwood lumber, shakes and shingles, and fence from Canada.

After numerous federal and provincial programs involving the lumber industry were investigated, the ITA in its preliminary determination on March 7, 1983, determined that some of the programs conferred *de minimus* subsidies; others conferred no subsidy at all. 48 Fed.Reg. 10395 (March 11, 1983). The ITA specifically determined that the programs by which the Canadian governments, both federal and provincial, furnished private companies with the right to cut and remove standing timber from government lands in exchange for various in-kind and monetary payments by the private companies did not provide subsidies under United States law. 48 Fed.Reg. 10402–04. The ITA gave four grounds for its determination that these stumpage programs do not constitute countervailable domestic subsidies.

First, the ITA found that the stumpage programs are not provided to a "specific enterprise or industry, or group of enterprises or industries," as is required for a program to be a subsidy. 19 U.S.C. § 1677(5)(B). The ITA found that the stumpage programs "are available within Canada on similar terms regardless of the

industry or the recipient." 48 Fed.Reg. 10403.

Second, the ITA made a preliminary determination that "even if stumpage programs were being provided to a 'specific group of ... industries' ... they would not confer a domestic subsidy within the meaning of subsection 771(5)(B) (because) Canadian stumpage programs do not provide goods at preferential rates to the producers of the products under investigation within the meaning of subsection 771(5)(B)(ii)." The stumpage programs were found not to be more favorable to some producers in Canada than to others. 48 Fed.Reg. 10403.

Third, the ITA preliminarily determined that the Canadian stumpage programs do not assume a cost of production of the Canadian lumber firms within the meaning of subsection 771(5)(B)(iv) of the Trade Agreements Act of 1979 because the programs do not relieve "an enterprise or industry of a pre-existing statutory or contractual obligation." 48 Fed.Reg. 10403. Rather, the Canadian governments impose fees upon the companies for the stumpage which the governments have owned "for well over a century."

Fourth, the ITA held that even if the statutory term of assumption of costs were construed in the broad fashion indicated by the plaintiff, the Canadian stumpage programs did not effectively reduce and therefore assume a cost of production of the Canadian companies.

On March 21, 1983, the plaintiff filed the instant action in this court seeking to reverse the ITA's preliminary negative determination by challenging two of the grounds on which the ITA predicated its negative determination:

(1) the Canadian federal and provincial governments' stumpage programs are not directed to a specific industry or group of industries, and

(2) an assumption of cost as defined by 19 U.S.C. § 1677(5)(B)(iv) requires the relief by a foreign government of a pre-existing statutory or contractual obligation of an enterprise or industry.

The plaintiff also requested that the court remand the case to the ITA, in order that the ITA calculate the amount of stumpage subsidies and direct the immediate suspension of liquidation of imports of the products under investigation.

The plaintiff filed with this court under date of March 21, 1983, a motion directing the defendants to show cause why an order should not be entered providing an expedited schedule in the determination of plaintiff's complaint. On March 21, 1983 the court issued this Order to Show Cause.

A hearing on said Order to Show Cause was held before this court on March 30, 1983, at which the Canadian Softwood Lumber Committee was joined as defendant-intervenor. On March 31, 1983, this court issued an order establishing a schedule for expedited review of plaintiff's complaint and defendants' and defendant-intervenor's motions to dismiss said complaint.

Defendants and defendant-intervenor have filed motions to dismiss plaintiff's action pursuant to Rule 12(b)(5) of the Rules of this Court on the grounds that this court lacks jurisdiction over the subject matter of plaintiff's action and that plaintiff has failed to state a claim upon which relief can be granted. The fundamental contention of said motions to dismiss is that judicial review of plaintiff's complaint is precluded by the fact that plaintiff has challenged only two of the four grounds for the ITA's preliminary determination that the Canadian stumpage programs do not confer subsidies upon Canadian lumber companies.

Defendants and defendant-intervenor contend that in attacking only two of the four grounds for the ITA's conclusion on stumpage the plaintiff is seeking only an advisory opinion from this court.

This court has exclusive jurisdiction over "any civil action commenced under section 516A of the Tariff Act of 1930." 28 U.S.C. § 1581(c). Section 516A of the Tariff Act of 1930, as amended, provides for judicial review in countervailing duty proceedings:

Within 30 days after the date of publication in the Federal Register of notice of ... a negative determination by the ad-

ministering authority under section 1671b(b) or 1673b(b) of this title ... an interested party who is a party to the proceeding in connection with which the matter arises may commence an action in the United States Court of International Trade by filing concurrently a summons and complaint ... contesting any factual findings or legal conclusions upon which the determination is based.

19 U.S.C. § 1516a(a)(1)(E).

Plaintiff contends that the provision in the statute allowing "interested parties" in a section 1671b(b) determination to challenge "any factual findings or legal conclusions upon which the determination is based" entitles him to judicial review of two of the four grounds given by the ITA in its preliminary negative determination. Defendant, on the other hand, contends that the law requires plaintiff to challenge the ITA determination itself, rather than selected grounds for the determination. 19 U.S.C. § 1516a(a)(1). The defendant argues that were the plaintiff found to be correct on its selected challenges, the negative determination itself would still be supported by the remaining two grounds which the plaintiff has not contested.

The legislative history of the provision for interlocutory review of negative preliminary determinations is revealing. The Senate Finance Committee clearly admonishes against a trial de novo in reviewing such determinations. It provides that judicial review of negative preliminary determinations "would proceed upon the basis of information before the relevant decisionmaker at the time the decision was rendered including any information that has been compiled as part of the formal record." S.Rep. No. 96–249, at 247–48. It can be inferred that the provision for the contest of "any factual findings or legal conclusions upon which the determination was based" in the statute is intended to limit the scope of challenges to the basis upon which a determination is supported. It is not the function of this court to review separately any objection which a plaintiff may have to an individual justification given by the ITA

for a determination, if the determination would stand apart from the particular challenged justification. Such separate review, implying as it does a later final review of the challenges to the other bases for the determination, would deviate from the Congressional goal of "reducing the existing redundancy of proceedings." *Id.* at 251.

In support of its position, the plaintiff cites *Republic Steel Corp. v. United States,* 4 CIT —, Slip Op. 82–55 (July 15, 1982). This court cannot concur that the *Republic Steel* decision is applicable to the issues herein. In that case the challenge by the plaintiff was to the negative preliminary determination which had been made by the ITA concurrently with certain other preliminary affirmative determinations. In overruling the government's motion to dismiss that action, the court held that a countervailing duty investigation by the ITA might include a multiple number of preliminary determinations, some of which might be affirmative, others negative. The court recognized that under the statute a challenge might be made to the negative preliminary determination notwithstanding the remaining individual preliminary determinations were affirmative and unchallenged.

In the instant proceeding, however, the plaintiff does not challenge the ITA's determination that the Canadian stumpage programs did not provide a subsidy to the Canadian producers. The plaintiff has challenged two discrete grounds given by the ITA for its determination. No judicial review has been provided therefore under 19 U.S.C. § 1516a(a).

One element of the provision for interlocutory review of administrative decisions which permeates both the legislative history of said provision and the decision of *Republic Steel* is the possibility that delaying review of a negative preliminary determination would cause a party to suffer "irreversible damage" by the import of products in the interim period. The Senate Finance Committee explained that "[t]he inclusion of provision for interlocutory review of (administrative preliminary) determinations in antidumping and countervailing duty proce-

dures is intended to enable a party to obtain review of administrative determinations at the earliest possible opportunity so as to avoid delay. Any substantial delay could make an ultimate resolution of an issue in a party's favor irrelevant because of the irreversible damage suffered during the interim period." S.Rep. No. 96–249, at 245. The *Republic Steel* decision cited the possibility that the U.S. steel producer would suffer irreversible damage during the interim period after a negative preliminary determination by the ITA as the reason interlocutory review in that case was necessary to fulfill Congressional purpose. The issue of "irreversible damage" has not been alleged in the instant proceeding.

■ This court is not prepared to state unequivocally that the possibility of "irreversible damage" to a petitioning party during the period between a negative preliminary administrative determination and the final determination is an absolute requirement for judicial review of such a determination. Congress clearly provided for review of all such determinations in antidumping and countervailing duty cases. The possibility of irreversible damage has been cited as an example of why such review is necessary.

■ However, in the instant proceeding were the court to sustain the plaintiff in its challenges to the two grounds cited by the ITA, the preliminary determination would continue to stand on the basis of the other grounds not challenged by the plaintiff. No liquidation could be suspended or subsidies calculated on the basis of plaintiff's challenges to the two individual grounds on which the preliminary determination of the ITA is predicated.

Nor can this court assume jurisdiction of this action for the purposes of determining whether the ITA should be, in plaintiff's

words, "guided" in making its final determination. It is not the function of this court to guide any administrative body; rather the function of this court is to review the determinations made by the administrative body. *Cover v. Schwartz,* 133 F.2d 541 (2d Cir.1942), *cert. denied,* 319 U.S. 748, 63 S.Ct. 1158, 87 L.Ed. 1703 (1943); *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) and *Muskrat v. United States,* 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911). To render opinions as to the two grounds of the ITA's stumpage determination challenged by plaintiff, even if to strike them down, would unjustifiably interfere in the administrative function as the ITA moves toward a final determination in this case.

Accordingly, this court must grant the motions of the defendants and the defendant-intervenor to dismiss the complaint herein. In granting the defendants' and the defendant-intervenor's motions to dismiss, this court is not expressing its approval or disapproval with respect to the correctness of the four grounds on which the ITA has predicated its negative preliminary determination. The sufficiency of the factual and legal grounds in support thereof are not before the court in this proceeding.

Now therefore, it is hereby

ORDERED, ADJUDGED and DECREED that the motions of the defendants and the defendant-intervenor be and are hereby granted and the complaint in the above-entitled action be and is hereby, accordingly, dismissed.